UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )  CR-05-48-B-W |
| JIMMY LEE WILSON, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Jimmy Lee Wilson helped his cohorts rob a credit union. He drove the robbers to the spot, listened as they planned the heist, operated the getaway car, and shared in the spoils. The Government, however, has charged Mr. Wilson with aiding and abetting an armed credit union robbery and with aiding and abetting the brandishing of a firearm. This Court concludes there is sufficient evidence to convict Mr. Wilson of aiding and abetting an armed credit union robbery, but insufficient evidence to convict him of aiding and abetting the brandishing of a firearm. It therefore declines to accept his guilty plea to the brandishing count.

## I. STATEMENT OF FACTS

### A. The Charges

Defendant Jimmy Lee Wilson is charged in a two-count Information (Docket # 2) with aiding and abetting armed credit union robbery and aiding and abetting the brandishing of a firearm during the robbery. Count One alleges that Mr. Wilson, in violation of 18 U.S.C. § 2113(a)[1] and § 2:

---

[1] The language in Count One of the Information alleges armed robbery; however, the Information cites only 18 U.S.C. § 2113(a). Section 2113(d), which is not cited, refers to robbery with the use of a dangerous weapon. It appears that the Government is proceeding under § 2113(d), even though it is not cited. The plea agreement states that "Count One charges the defendant with aiding and abetting the Armed Robbery of a Credit Union in violation of Title 18 United States Code, § 2113, (a) & (d)" and the maximum statutory penalties set forth in the plea

> [D]id aid and abet the taking by force, violence and intimidation from the person and presence of others, money belonging to and in the care, custody, control, management and possession of the Maine Savings Federal Credit Union, the deposits of which were then insured by the National Credit Union Administration Board, and in committing such offense, the defendant did aid and abet the placing in jeopardy the lives of other persons by the use of a dangerous weapon.

Count Two alleges Mr. Wilson, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and § 2:

> [K]nowingly aided and abetted the brandishing of a firearm, specifically a .22 caliber H & R revolver, the serial number of which had been ground off or obscured, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely, the offense charged in Count One of this Information.

On June 16, 2005, Mr. Wilson made his initial appearance before this Court, waived indictment, and stated his intention to enter a plea of guilty. During the Rule 11 portion of the hearing, this Court expressed concern whether the Prosecution Version contained evidence sufficient to establish that Mr. Wilson knew the co-defendants were going to use or brandish a gun during the robbery. This Court stopped the proceeding and ordered the parties to submit memoranda. The parties complied.[2] On June 30, 2005, the Government filed a Second Amended Prosecution Version (Docket # 11).

### B. The Government's Case

The Seconded Amended Prosecution Version alleges:

> On October 18, 2004, Jeremy Jones (Jones), his wife Bobbi Jo Jones, Albert Thomas Peaslee, Jr. ("AJ" Peaslee), and the defendant traveled to Wiscasset in a vehicle owned and driven by the defendant. Peaslee had discussed a robbery plan with Jeremy Jones over the phone that involved a target in Wiscasset and the defendant had agreed to assist in the robbery by driving.

---

agreement are subsection (d) penalties. For purposes of this Order, this Court assumes the Government is pursuing an armed robbery offense under § 2113(d).

[2] Although this Court requested memoranda regarding both counts, the parties appeared to have focused solely on Count II. This Court will nevertheless address the sufficiency of both counts.

The defendant and the others arrived at the Log Cabin Store in Wiscasset. Peaslee explained to Jeremy Jones that an older man with white hair would soon arrive at the store carrying a bag. According to Peaslee, the bag would contain worm digger checks that totaled $7,000 to $8,000. Peaslee told Jones that the man would know him (Peaslee), so Jones would have to do the robbery. The group left Jones at the store and the defendant moved the vehicle out of sight. The man arrived and entered the store. When the man left the store, Jones tried to pull the bag away from the man but the man would not let go of the bag. The man fell to the ground and Jones fell on top of him. Jones took the bag and opened it. He saw that there was no money and ran off through the woods where the others were waiting for him in the defendant's vehicle. Jones was not armed and Peaslee had not suggested to him that he use a weapon.

Peaslee told Jones that he did not believe the claim made by Jones that he had not been successful. Peaslee accused Jones of stashing money in the woods and threatened him with a black revolver. Peaslee brandished the revolver in the vehicle and in the presence of the defendant.

The defendant drove to China, Maine, and the group "cased" a bank there but decided against robbing the bank because there were too many cars around. The group then went to Vassalboro because they knew that Vassalboro had no police station. They drove past the Maine Savings Federal Credit Union (MSFCU) and decided that it was a good target. The defendant parked out of view of the bank. In the defendant's vehicle and in the defendant's presence, Peaslee told Jones that he wanted Jones to hold the gun during the robbery. Jones refused but agreed to be the lookout and to keep the time and let Peaslee know when 30 seconds had passed. As Peaslee and Jones exited the defendant's vehicle and then began to walk toward the credit union, they discussed additional details of the robbery plan. Peaslee told Jones not to use their real names. Peaslee and Jones discussed disguises and Peaslee had two black ski masks and two pair of black gloves.

Peaslee and Jones walked toward the MSFCU. They were wearing the ski masks on their heads as hats and when they were in front of the bank they pulled the masks down. Each of them wore gloves and sweatshirts. As they entered the bank, Peaslee pointed the loaded gun at the tellers. As one of the tellers moved toward an office, Peaslee told her, "Don't do it lady, I'll shoot you in the back." Jones kept track of time by counting to himself and at twenty seconds told Peaslee that it was time to leave. Peaslee continued to collect money and as he finished he told the tellers, "Nobody move until we're gone or this (referring to the gun) will fuck up your day."

>Peaslee and Jones ran from the bank to the defendant's car, where the defendant and Bobbi Jo Jones were waiting. The four left Vassalboro and headed to Augusta. On the way, they stopped the car and Peaslee threw the gun and its holster into a pond. When they arrived in Augusta they went to a convenience store. Peaslee and Jones discarded their ski masks, gloves, and sweatshirts into a dumpster. All four individuals went to the defendant's apartment in Augusta and divided the robbery proceeds. The defendant received approximately $5,000.
>
>Investigative leads developed by the Kennebec County Sheriff's Office and the Maine State Police led detectives to suspect that the defendant was involved in the credit union robbery. Detective Adam Kelley interviewed the defendant on November 18, 2004. The defendant admitted having been the driver for the MSFCU robbery but claimed that he was too "fucked up" to remember the details of his involvement. He acknowledged having known that there was a gun in his car before the robbery attempt and he told Detective Kelley that he had received a share of the robbery proceeds. According to the defendant, he spent most of his share on heroin and cocaine.
>
>On November 23, 2004, the Maine State Police Dive Team recovered a revolver in a holster from Alligator Pond in Augusta. The appearance of the revolver matched the description given by Jeremy Jones to investigators of the gun used in the credit union robbery.

*Am. Prosecution Version* at 1-3.

## II. DISCUSSION

### A. Rule 11(b)(3): A Factual Basis for the Plea

Before entering judgment on a guilty plea, this Court must determine there is a factual basis for the plea. Fed. R. Crim. P. 11(b)(3); *see also United States v. Gandia-Maysonet,* 227 F.3d 1, 6 (1st Cir. 2000). The question under Rule 11(b)(3) "is not whether a jury would, or even would be likely, to convict: it is whether there is enough evidence so that the plea has a rational basis in facts that the defendant concedes or that the government proffers as supported by credible evidence." *Delgado-Vazquez v. United States*, 327 F. Supp. 2d 213, 217 (D.P.R. 2005) (citation and internal punctuation omitted). "At its most abecedarian level, the requirement that a

4

guilty plea must be supported by an adequate factual basis ensures that the conduct to which the defendant admits constitutes the crime with which he is charged." *United States v. Negron-Narvaez*, 403 F.3d 33, 37 (1st Cir. 2005). This protects a defendant "who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *Id.* (citations and internal punctuation omitted). The component facts may come from the defendant's admissions and concessions or from credible evidence proffered by the government and not contradicted by the defendant. *Id.* Rule 11 inquiry is not "designed to be a test of guilt versus innocence." *Id.* The court "need only be persuaded that sufficient evidence exists to permit a reasonable person to reach a finding of guilt"; the court "need not be convinced beyond a reasonable doubt that the defendant is in fact guilty." *Id.* (citation and internal punctuation omitted).

### B.  Aiding and Abetting Armed Bank Robbery

#### 1.  The Shared Knowledge Requirement

To aid and abet another to commit a crime, it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *Nye & Nissen v. United States,* 336 U.S. 613, 619 (1949) (quoting *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir. 1938)). In *United States v. Spinney*, 65 F.3d 231 (1st Cir. 1995), the First Circuit listed two elements for accomplice liability: (1) that the principal committed the substantive offense; and, (2) that the accomplice "became associated with the endeavor and took part in it, intending to assure its success." *Id.* at 234-35. Because the evidence is sufficient to establish the co-defendants committed armed bank robbery, this Court directs its analysis to the second element.

The central requirement of the second element is "a showing that the defendant consciously shared the principal's knowledge of the underlying criminal act, and intended to help the principal." *United States v. Taylor,* 54 F.3d 967, 975 (1st Cir. 1995). "In a prosecution for armed bank robbery, this shared knowledge requirement is binary; it extends both to awareness of the robbery and to comprehension that a weapon would likely be used." *Spinney*, 65 F.3d at 235; *see also United States v. Jones,* 678 F.2d 102, 106 (9th Cir. 1982) (explaining that, to convict under § 2113(d), the prosecution must "show that the defendant aided and abetted the principal both in the act of bank robbery and in the principal's use of 'a dangerous weapon or device' during the act"). The first part of the test is not in dispute: the evidence is overwhelming that Mr. Wilson knew about the robbery.

It is the second part of the test that causes pause. Mr. Wilson maintains the evidence in the Prosecution Version does not adequately show he knew, prior to the robbery, that the co-defendants would use a firearm. *See United States v. de la Cruz-Paulino,* 61 F.3d 986, 999-1000 (1st Cir. 1995) (in aiding and abetting case, shared knowledge must be prior knowledge); *United States v. Dinkane,* 17 F.3d 1192, 1197 (9th Cir. 1994) (holding that, for purposes of § 2113(d), aiding and abetting requires prior knowledge of weapon). "A participant in the holdup of a bank will be found to be an aider and abettor of an *armed* robbery only if the government can provide an additional piece of the puzzle: proof that the accomplice 'knew a dangerous weapon would be used [in the robbery] or at least . . . was on notice of the likelihood of its use.'" *Spinney*, 65 F.3d at 236 (quoting *United States v. Sanborn,* 563 F.2d 488, 491 (1st Cir. 1977)).

Acknowledging that knowledge is "a continuum," the First Circuit has illuminated the "shared knowledge" requirement by distinguishing between two types of knowledge: actual and constructive. *Id.* at 236-27. Constructive knowledge is "the law's way of recognizing that, given

6

an awareness of certain subsidiary facts, a person is quite likely to know, can be expected to know, or at least should know that a further fact exists." *Id.* at 236. Actual knowledge, by contrast, "suggests the presence of particular evidence which, if credited, establishes conclusively that the person in question knew of the existence of the fact in question." *Id.* As *Spinney* explained, the concepts of actual and constructive knowledge are poles along either side of the knowledge continuum and the facts in a particular case rarely stand neatly beside either extreme. *Spinney* concluded, however, for § 2113(d) cases, a conviction can be "grounded on something less than actual knowledge," and therefore, an "enhanced showing of constructive knowledge will suffice." *Id.* at 237; *see also Sanborn,* 563 F.2d at 491 (the accomplice's knowledge that use of a dangerous weapon was fairly within the robbery plan need not be shown by explicit proof of expressed intention).

In *Spinney*, the First Circuit determined the defendant had notice of the likelihood the principal would use a weapon during the commission of the bank robbery:

> Spinney was not merely a bit player (say, a lookout or a getaway driver), but a leading man. A jury could reasonably infer from the totality of the attendant circumstances, particularly from the host of telephone calls between Spinney and Kirvan and from Spinney's participation in the elaborate reconnaissance mission, that he had a major role in planning the heist. Even assuming that there was no specific discussion of the use of a gun, evidence of a defendant's substantial involvement over the course of several days in planning and orchestrating a robbery, when coupled with actual participation in carrying it out, permits a compelling inference that the defendant knew the salient details of the plot (e.g., the timing of the robbery, the bank's identity and location, the planned entry by a lone robber). These circumstances seem to us to sustain a finding that Spinney was on notice that Kirvan likely would tote a gun in the course of the upcoming robbery.

*Spinney*, 65 F.3d at 237; *see also United States v. James,* 998 F.2d 74, 80-82 (2d Cir. 1993), *cert. denied,* 510 U.S. 958 (1993) (holding that escape driver with no prior knowledge that robbery

7

would be armed is aider and abettor of armed bank robbery if he knowingly and willfully joins in the escape phase of an armed bank robbery knowing that an accomplice has a gun).

### 2. Mr. Wilson's Shared Knowledge

Before the robbery, Mr. Wilson knew 1) Mr. Peaslee had a handgun; 2) Mr. Peaslee had earlier threatened Mr. Jones with the gun; 3) Mr. Peaslee's threat involved the commission of a failed prior robbery; 4) the group, including Mr. Wilson and Messrs. Peaslee and Jones intended to rob a credit union; 5) they had cased out another credit union before selecting the final victim; 6) Mr. Peaslee had demanded Mr. Jones carry his handgun during the credit union robbery; 7) Mr. Jones refused, but agreed otherwise to participate in the robbery; and, 8) Messrs. Peaslee and Jones then left Mr. Wilson's car to rob the credit union. Based on these facts, there is sufficient evidence to permit a reasonable person to find that, prior to the robbery, Mr. Wilson knew, was quite likely to know, could be expected to know, or should have known that Messrs. Peaslee and Jones would tote a gun while committing the credit union robbery. See *Negron-Narvaez,* 403 F.3d at 37; *Spinney,* 65 F.3d at 236.

### C. Aiding and Abetting the Brandishing of a Firearm

#### 1. The Statute: § 924(c)

Section 924(c) of title 18 imposes an escalating set of enhanced penalties for the way a defendant commits certain crimes. If a defendant commits a crime of violence while using, carrying, or possessing a firearm, he subjects himself to at least a five year term of additional imprisonment, and if he commits the same crime and brandishes a firearm, he subjects himself to at least a seven year term of additional imprisonment. 18 U.S.C. § 924(c)(1)(A)(i), (ii). The term, "carry," as used in § 924(c), refers to "moving a firearm from one place to another." *Badamo v. United States,* 17 F. Supp. 2d 60, 63 (D.R.I. 1998), *aff'd,* 201 F.3d 426 (1st Cir.

1999). A defendant carries a firearm "during and in relation to" a crime of violence when he "intended to have [the firearm] available for possible use during or immediately following the transaction, or if [the firearm] facilitated the transaction by lending courage to the possessor." *Id.* (quoting *United States v. Payero,* 888 F.2d 928, 929 (1st Cir. 1989)) (internal punctuation omitted). The statute defines "brandish" as "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." § 924(c)(4); *accord United States v. Lewis,* 406 F.3d 11, 21 n.11 (1st Cir. 2005).

### 2. Aiding and Abetting the Brandishing

No doubt, there are cases where it is manifestly clear a defendant aided and abetted the brandishing of a firearm in the commission of a crime of violence. This is not one of them. Here, the analysis turns on greater subtlety. The problem is the quality of evidence necessary to sustain the Government's contention that Mr. Wilson was complicit not merely in his co-defendant's robbery, not even in his co-defendant's carrying a firearm, but in his co-defendant's decision to brandish the firearm while committing the robbery.[3]

Mr. Wilson was sitting in the driver's seat of the getaway vehicle while Mr. Peaslee and Mr. Jones discussed plans for the robbery. This Court has already concluded there is sufficient evidence to allow the conclusion that Mr. Wilson was aware they intended to tote the firearm. But, the statute distinguishes between carrying and brandishing, adding two more years of incarceration for brandishing. Absent direct evidence that Mr. Peaslee announced in the getaway vehicle before entering the credit union that, once inside, he fully intended to pull out his

---

[3] In its memorandum, the Government appears to misapprehend its own charges. It has argued that the evidence is sufficient to sustain its burden to demonstrate "that a defendant knew or was practically certain that his confederate would *carry or use* a firearm." *Gov't Mem. Discussing Count Two of the Pending Information* (Docket # 7) at 1 (emphasis added). The Government failed to address the significant statutory distinction between carrying, using, possessing under subsection i and brandishing, which is the enhancement it has charged, under subsection ii.

9

revolver to intimidate the tellers, what does the law require to impose the enhanced additional penalty for aiding and abetting the brandishing of a firearm?

### 3. To a Practical Certainty and the Willing Facilitation Element

The standard of knowledge to convict an aider and abettor is greater for brandishing a firearm than for armed bank robbery. To prove a defendant aided and abetted a violation of § 924(c)(1)(A)(ii), the government must establish (1) the defendant knew "to a practical certainty" that the principal would be brandishing a gun, and (2) he willingly took some action to facilitate that brandishing. *See United States v. Medina-Roman*, 376 F.3d 1, 6 (1st Cir. 2004), *cert. denied,* 125 S. Ct. 512 (2004); *see also United States v. Bennett*, 75 F.3d 40, 45 (1st Cir. 1996), *cert. denied*, 519 U.S. 845 (1996); *United States v. Luciano-Mosquera,* 63 F.3d 1142, 1150 (1st Cir. 1995). The First Circuit has held that "practical certainty" is a "rubric that calls for proof verging on actual knowledge."[4] *Spinney*, 65 F.3d at 238. Accordingly, to convict Mr. Wilson on a charge of aiding and abetting a violation of § 924(c)(1)(A)(ii), the evidence at trial would be sufficient only if the Government could show that he knew to a practical certainty the firearm would be brandished during the robbery and that he took some action intending to cause the gun to be brandished. *See Medina-Roman*, 376 F.3d at 6; *Luciano-Mosquera,* 63 F.3d at 1150. The First Circuit also explained an additional element, the "willing facilitation element," which provides that "mere knowledge does not make a defendant an aider and abettor unless he has

---

[4] The First Circuit has explained some policy reasons courts might wish to adopt divergent standards for an accomplice's knowledge under § 2113(d) and § 924(c)(1)(A)(i):

> While possession of a gun or other dangerous instrumentality will likely facilitate a bank robbery, many of the felonies that underlie § 924(c) can be--and often are--completed unarmed. Furthermore, defendants convicted of violating § 924(c), unlike defendants convicted of violating § 2113(d), must be given an *additional* sentence of at least five years, to run consecutively to the term of incarceration imposed for the underlying crime. *See* 18 U.S.C. § 924(c)(1). Both of these considerations suggest that a higher threshold of knowledge may well be appropriate in the § 924(c) milieu.

*Spinney*, 65 F.3d at 239 n.8.

willingly done something to bring about the other's [brandishing] of a firearm." *Medina-Roman*, 376 F.3d at 6.

In *Spinney*, the First Circuit concluded that the government adduced no evidence suggesting that firearms were actually contemplated in the planning stages, or that Spinney had any actual knowledge that the principal would be armed. *Spinney*, 65 F.3d at 239. The Court noted that, although Spinney may have spent much time with the principal devising the plan and was on notice of the likelihood that a gun would be used in the course of the robbery, there was simply no evidence to support a reasoned conclusion that Spinney was practically certain that the principal would be armed. *Id.*

### 4. Insufficient Evidence

Here, there is no direct proof Mr. Wilson knew that Mr. Peaslee was going to brandish the firearm. There is some circumstantial evidence. A reasonable person could conclude there is sufficient evidence to find that Mr. Wilson knew Mr. Peaslee was going to carry a firearm during the robbery, and that, because he had brandished the firearm earlier in the day when he threatened Mr. Jones, he might do the same upon entering the credit union. However, this circumstantial evidence falls short of the "practical certainty" and "willing facilitation" requirements for aiding and abetting the brandishing of a firearm, and therefore, this Court concludes there is insufficient evidence to sustain a guilty plea to the crime of aiding and abetting the brandishing of a firearm under § 924(c)(1)(A)(ii).

## III. CONCLUSION

This Court concludes there is a sufficient factual basis under Fed. R. Crim. P. 11(b)(3) for the Defendant's guilty plea to Count One of the Information. However, this Court concludes there is an insufficient factual basis under Rule 11(b)(3) for the Defendant's guilty plea to Count

Two of the Information, and it declines to accept Defendant's guilty plea to Count Two based on the Prosecution Version currently before this Court.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of July, 2005